Argued and submitted September 30, 1985, reversed and remanded for new trial, probation revocation reversed January 8, 1986

# STATE OF OREGON,
*Respondent,*

*v.*

# GARY ALLEN McDONALD,
*Appellant.*

(84-659C & 84-1325C; CA A34571 & A34572)
(Cases consolidated)

712 P2d 163

Sally L. Avera, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Jeffrey Bennett, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Defendant appeals his conviction for burglary in the first degree, ORS 164.225, and revocation of probation on a different offense because of that conviction.[1] He contends that the trial court erred (1) in admitting proof of a prior burglary conviction, (2) in admitting certain stipulated polygraph evidence, (3) in holding that there was sufficient evidence to prove that a particular travel trailer is a "dwelling" for the purpose of ORS 164.205 and (4) in instructing the jury that it could infer criminal intent from defendant's unlawful presence in the trailer.[2] We reverse.

The Feethams parked their 32-foot travel trailer in the driveway of their home. The trailer is a self-contained unit composed of kitchen, living and sleeping areas and is designed to be towed behind another vehicle. Several times a year relatives or other guests slept in the trailer. Shortly before midnight on August 5, 1984, the Feethams' daughter heard a loud bang. She looked outside and saw defendant remove a screen and climb into the trailer through an open window. She called the police, who arrived in a few minutes. The officers heard footsteps and rustling sounds inside the trailer. When they entered the trailer, they found defendant lying on a sofa. Sofa cushions were scattered on the floor near him. Nothing else except the screen had been disturbed.

Defendant explained that he was drunk and was just looking for a place to sleep. On the way to jail, defendant told the officers that he had been drinking with a friend, had become intoxicated and had left the friend's car to urinate and could remember nothing further. At 12:21 a.m., a sample of

---

[1] In May, 1984, defendant was convicted of first degree burglary. The court imposed a five-year suspended sentence and placed him on probation with the condition, *inter alia,* that he conduct himself as a law abiding citizen. After he was convicted of this offense, he admitted violating the terms and conditions of the probation. The court revoked probation and then reinstated it with the same conditions, as well as the additional condition that he serve ninety days in jail consecutive to any other sentence. Because the probation revocation was based solely on the conviction at issue here, and because we reverse that conviction, we also reverse the probation revocation.

[2] Because defendant did not object at trial to the polygraph evidence or the instruction, we do not consider those assignments of error. We note, however, that the state concedes, with respect to the instruction, that a similar instruction was held to be erroneous in *State v. Johnson,* 55 Or App 98, 103, 637 P2d 211, *rev den* 292 Or 722 (1981).

defendant's breath tested .09 percent. Officers testified that, although defendant's speech was slightly slurred and his breath had a mild alcohol odor, they did not believe that he was highly intoxicated. The parties stipulated to the admissibility of a polygraph examination. The examiner testified that, when defendant denied an intent to steal anything from the trailer, the polygraph indicated that he had not told the truth.

■     Defendant's first assignment of error is that the trial court erred in admitting, as part of the state's case in chief, a recent prior conviction for burglary in the first degree. OEC 404(3) provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, *intent,* preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis supplied.)

The first step in an analysis of whether evidence is admissible under OEC 404(3) is to determine whether the evidence is relevant to establish some fact or inference that the state is entitled to prove, *i.e.,* a fact or inference other than defendant's propensity to commit a crime. *State v. Collins,* 73 Or App 216, 219, 698 P2d 969 (1985). If the evidence is relevant, the next question is whether the probative value of the evidence exceeds its inflammatory nature. *State v. Bovee,* 75 Or App 544, 547, 706 P2d 1005 (1985); *State v. Collins, supra,* 73 Or App at 220. Because we hold that the evidence was not relevant, we need not reach the second step.

■     "Relevant evidence" is any evidence that tends to make the existence of any consequential fact more probable or less probable than it would be without the evidence. OEC 401. The state argues that the burglary conviction was relevant to rebut defendant's contention that he entered the trailer innocently, without any intent to commit a crime therein. Defendant, on the other hand, argues that the prior conviction had no tendency to prove criminal intent, because (1) the prior burglary was distant in time from and factually unrelated to this offense and (2) the crimes were not shown to have been committed by so similar a method as to permit jurors to infer a common intent. We agree with defendant.

We have held that, when a defendant places intent in issue by admitting the alleged act but claiming that it was inadvertent or innocent, evidence of similar acts is admissible to prove the requisite intent.[3] *See, e.g., State v. Sjogren,* 39 Or App 639, 644, 593 P2d 1188 (1979); *State v. Sicks,* 33 Or App 435, 438, 576 P2d 834 (1978). There must, however, be some basis from which the jury can infer that defendant had the requisite intent, *other than* the mere fact that defendant previously committed the same or a similar crime. 1 *Wharton's Criminal Evidence* § 245 (13th ed. 1972).[4] For example, that basis can be a close relationship in time, *see, e.g., State v. Sjogren, supra,* 39 Or App at 644 (defendant's attempt, on same day, to take another car is relevant to prove that he intended to obtain victim's car noninnocently); the same or similar victims, *see, e.g., State v. Mills,* 39 Or App 85, 88, 591 P2d 396 (1979) (prior mistreatment of same victim relevant to show intent in sexual assault charge); *State v. Fleischman,* 10 Or App 22, 28, 495 P2d 277, *rev den* (1972) (prior assaults on police officers relevant to prove malice requirement of charge for assault on police officer with intent to kill); *modus operandi* evidence, *see, e.g., State v. Fears,* 69 Or App 606, 609, 688 P2d 88 (1984) (evidence that defendant raped different victim in similar fashion two nights before raping current victim is relevant to rebut consent defense); or a common plan or scheme, *see, e.g., State v. Seydell,* 252 Or 160, 163, 446 P2d 678 (1968) (evidence that defendant previously had burned a building to obtain insurance money relevant to charge of obtaining money by false pretenses from insurance company by staging a fake burglary). Where, however, the prior crime is distant in time from and factually unrelated to the offense in question, we have held that the evidence of the prior crime is inadmissible, because it is only relevant to prove the character of the accused to show that he acted in conformity therewith. *State v. Johns,* 76 Or App 448, 457, 709 P2d 1121 (1985); *State*

---

[3] In his opening statement to the jury, defendant made it clear that intent was the only real issue in the case. He conceded that he was inside the trailer but suggested that he was too intoxicated to form an intent to commit a crime therein.

[4]

"Evidence of other crimes may be relevant and hence admissible to show the intent of the defendant. Such other crimes must be so related to the crime charged in point of time or circumstances that evidence thereof is significantly useful in showing the defendant's intent in connection with the crime charged." 1 *Wharton's Criminal Evidence* § 245. (Notes omitted.)

*v. Parks,* 71 Or App 630, 634, 693 P2d 657 (1984). We turn to the facts.

■ The burglary conviction arose from events occurring approximately six months before defendant entered the trailer. This six-month time lag is neither great enough to preclude relevancy, *see State v. Parks, supra,* nor short enough to insure it. *See State v. Sjogren, supra.* The state had to show *some* factual similarity between the two burglaries. Because it failed to do so, the trial court erred in admitting the evidence.

The state argues that the error was harmless and, therefore, does not require reversal, *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973), because there was overwhelming evidence of defendant's intent to commit a crime in the trailer. We disagree. The error was not harmless.

■ In view of the possibility of retrial, we address the remaining assignment of error. Defendant claims that the trial court erred in holding that there was sufficient evidence to prove that the trailer is a "dwelling" within the meaning of ORS 164.205(2):

" 'Dwelling' means a building which regularly *or intermittently* is occupied by a person lodging therein at night, whether or not a person is actually present." (Emphasis supplied.)

Defendant concedes that the trailer is a "building" within the meaning of the statute, *see* ORS 164.205(1), but argues that there was insufficient evidence to show that the trailer was "intermittently" occupied by a person lodging therein at night.

The state, on the other hand, argues that the evidence was sufficient to prove that the trailer was used intermittently by persons for lodging at night. It is a self-contained living unit. It is used by guests for sleeping several times a year. The owners' daughter has slept there on occasion. On the date when defendant entered the trailer, the daughter's boy friend was to have slept there. That evidence is sufficient.

The term "intermittent" is not defined in the statute. In its ordinary usage, it means "coming and going at intervals" or "not continuous." *Webster's Third International Dictionary* 1180 (1966). The evidence clearly shows that the

owners' relatives and guests came to and went from the trailer at intervals.

Defendant relies primarily on *State v. Eaton,* 43 Or App 469, 472, 602 P2d 1159 (1979), *rev den* 288 Or 335 (1980), where we held:

> "Where an eight-week period of occupancy is followed by 44 weeks of vacancy, *and where the burglary occurred months after the last occupant left,* we conclude that the structure is not occupied 'regularly or intermittently.'" (Emphasis supplied.)

We believe that *Eaton* is inapposite. The rationale for making burglary a crime is to "[protect] against invasion of premises likely to terrorize occupants." Criminal Law Revision Commission, *Proposed Oregon Criminal Code* 143, § 135, Commentary (1970). Where a burglary occurs months after the last occupant left, the invasion is unlikely to terrorize any sleeping occupant. Where, however, a building is occupied at night at irregular intervals, the likelihood of terrorizing sleeping occupants exists. For these reasons, we conclude that there was sufficient evidence to show that the trailer is a dwelling as contemplated by the statute.

Reversed and remanded for a new trial; revocation of probation reversed.