Argued and submitted February 27, reversed and remanded for new trial
September 11, 1991

## STATE OF OREGON,
*Respondent,*

*v.*

## RAYMOND ONWARD BOLT,
*Appellant.*

(10-89-02185; CA A62123)

817 P2d 1322

Peter Gartlan, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant appeals his convictions for kidnapping in the first degree, ORS 163.235, two counts of rape in the first degree, ORS 163.375, and menacing. ORS 163.190. He assigns as error, *inter alia,* the trial court's failure to sustain his objection to improper remarks made by the prosecutor during closing arguments and its rulings on his objections to testimony that the state elicited from him on cross-examination. We reverse and remand for a new trial.

These facts are undisputed. Defendant and the victim had lived together and had a child before the incident from which the charges arose. They did not marry and subsequently separated. While separated, they made arrangements for defendant to see the child at his motel room. The child was about one year old at the time. They met at a restaurant and, after about an hour, the victim drove defendant to the motel and entered the room with him and the child.

The facts regarding what occurred in the motel room are disputed. The victim testified that defendant threatened her with a shotgun and a knife, forced her to remain in the motel room and raped her twice. She escaped with the child when defendant was asleep. Defendant testified that they had argued over custody of the child; however, he denied that he threatened her or forced her to remain. He also testified that they had consensual sexual intercourse and that she left without explanation after he had fallen asleep.

During the state's closing argument, this exchange occurred:

"[Prosecutor]: In the newspaper we read about — just over the weekend — about a man who kidnaps, holds hostage a —

"[Defense Counsel]: Objection. This is not in evidence.

"The Court: Overruled.

"[Prosecutor]: Kidnaps a family member and holds the family member hostage in the school for a period of time in the state of Oregon. And apparently had broken into her house and held her hostage in her house for a time period before that.

"During the same time period while this trial's been going on, somebody else kills his estranged girl friend here in the state of Oregon and gets arrested for that.

"We had a juror who said that she was sexually abused by her husband before they split up, and that she could not be fair in this case. So we have these things going on around us at all times.

"An editorial in the Register-Guard says in a one-year period 1,500 women were killed in this country by boyfriends, ex-boyfriends, husbands or ex-husbands. So that's about three a day. Those are deaths. I mean fortunately in this case we do not have a death.

"* * * * *

"The same editorial in the Register-Guard that talked about 1,500 women getting killed in one year by spouses or boyfriends and ex-spouses or ex-boyfriends, one man kills his wife because she wanted to go Christmas shopping. You know, so these things can happen for all kinds of reasons. Some of them we think would be pretty small. I guess we don't like our wives to be out Christmas shopping, but we don't feel that strongly about it. But it happens.

"Same article, we're reading about a lady judge who gets killed by her husband police officer because he can't take any more. So these things are out there happening to people in every socio-economic stratus [sic]."

Defendant argues that the prosecutor's argument was improper and so prejudicial that reversal is required.

■ A trial court has broad discretion in its control of the arguments of counsel. However, its discretion is not unbounded. We must reverse when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly. *See State v. Lundbom,* 96 Or App 458, 461, 773 P2d 11, *rev den* 308 Or 382 (1989).

■ It is improper, during closing argument, for counsel to rely on facts that are not in the record. In *State v. Blodgett,* 50 Or 329, 92 P 820 (1907), the defendant was charged with first degree murder. During the prosecutor's closing argument, he mentioned other murders that were not in evidence and that had been committed by other people in the area just before the alleged murder. The Supreme Court said:

"[I]t must finally rest upon the facts of each particular case

as to what matters adverted to but not in evidence are pertinent to the issues, or what immaterial matters referred to may produce injury to the substantial rights of the defendant.

"It needs no extended consideration or citation of authority to establish that the references made in this case by the district attorney to some other criminal who, it was said, had killed his wife, his mother-in-law and his father-in-law in the county where defendant was being tried, or to what Wade and Dalton, other criminals, may have done, and how they accomplished their nefarious crime, and what manner of defense they made to the charge of murder, could have no legitimate bearing on the guilt or innocence or the degree of guilt of this defendant. It is manifestly obvious that reference to such matters was highly improper." 50 Or at 343.

The state argues that, in closing argument, counsel's reference to matters of common knowledge is not improper. It also argues that, *considered in context,* the prosecutor's comments in this case were necessary to rebut the defense contention that the case was really just a domestic squabble that the victim had fabricated into a criminal case. Moreover, the state argues that the comments were necessary to impress on the jury that domestic violence in our society is a very serious problem. However, instead of making reference to matters of common knowledge, the prosecutor, over defendant's objection, cited specific examples of other alleged crimes purportedly reported in the local newspaper. The prosecutor also referred the jury to a report allegedly published in the local newspaper stating that 1,500 women were killed over a one year period by their current or ex-lovers or husbands. Finally, the prosecutor reminded the jury of a potential juror, excused for cause in that case, who had been sexually abused by her husband.

A prosecutor may properly seek to impress on the jury the serious or aggravated nature of a defendant's alleged criminal conduct and the jury's duty to condemn that conduct. *See State v. Black,* 150 Or 269, 290, 42 P2d 171, *reh den* 150 Or 291 (1935). However, leading the jury's attention to the specific facts of other unrelated, particularly heinous crimes, as the prosecutor did here, creates the very strong likelihood that the jury's disgust and fear about those unrelated crimes will improperly influence its decision about the

facts of the case then under consideration. Under the circumstances, we hold that the comments were highly likely to incite or inflame the jury to decide the case on an improper basis.

■    We reach one of defendant's remaining assignments of error, because it concerns evidentiary issues that may recur on remand. During cross-examination of defendant, the state elicited testimony from him that, before the victim accused him, she already knew: (1) that there were two outstanding arrest warrants for him on charges of indecent exposure; (2) that he drank heavily; (3) that he had used illegal drugs; (4) that he did not support his children; (5) that he had not divorced his wife; (6) that he was frequently unemployed; (7) that he had previously been convicted of certain crimes and violated the terms of his probation on those convictions; and (8) that he had had a physical altercation with his wife.

Defendant first argues that the testimony was a form of character evidence and was not admissible, because it was not relevant, was not improper impeachment evidence and that, in any event, defendant lacked personal knowledge about the victim's knowledge of those acts. Defendant also contends that the prejudicial impact of the testimony substantially outweighed any probative value. At trial, defendant argued that the victim fabricated the charges to gain an advantage in a possible custody dispute over the child. Therefore, the state contends that the testimony was properly admitted to demonstrate that the victim had no need to fabricate the charges, because she already knew enough bad things about the defendant's character and background to keep him from gaining custody of their child.

The testimony that defendant challenges concerns evidence of "other crimes, wrongs or acts," not admissible as character evidence. OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The list of purposes under OEC 404(3) for which this type of evidence may be admitted is not exclusive. *State v. Johns,* 301 Or 535, 725 P2d 312 (1986). In *Johns,* the Supreme Court discussed the steps that a trial court must take in deciding whether to admit this type evidence. The trial court must first decide whether the evidence is relevant "to a fact at issue in the trial," rather than solely to prove "a propensity to commit certain acts." 301 Or at 549. Even if relevant to prove a fact at issue, the trial court must apply OEC 403, which provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

301 Or at 550; *see also* 1981 Conference Committee Commentary to OEC 404(3).

Defendant's testimony about the victim's knowledge of his prior misdeeds tended to rebut defendant's argument that the victim fabricated the charges. That was a material factual issue in the case. Therefore, the testimony was relevant for a proper purpose, rather than merely to prove defendant's propensity to commit bad acts. *State v. Mayfield,* 302 Or 631, 644, 733 P2d 438 (1987); *State v. Bovee,* 75 Or App 544, 547, 706 P2d 1005 (1985); *see also* OEC 401.

■ Defendant argues that, even if the testimony has some relevance, it was improper to examine him to determine what the victim knew, because he lacked personal knowledge about what she knew. OEC 602 provides:

> "Subject to the provisions of ORS 40.415, a witness may not testify to a matter unless evidence is introduced *sufficient to support a finding that the witness has personal knowledge of the matter.* Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness." (Emphasis supplied.)

A witness need not have "absolute personal knowledge" regarding the subject matter of his or her testimony. 1981 Conference Committee Commentary to OEC 602.

At trial, defense counsel objected only once on the ground that defendant lacked personal knowledge. That objection involved only the testimony about prior convictions.

Defendant initially testified that he did not know whether the victim knew about his prior convictions. Then the state elicited testimony that, during the time that the victim and defendant were living together, he had attended probation violation hearings regarding the prior convictions and that they may have talked about the convictions. That testimony was sufficient evidence to support a finding that he had personal knowledge that the victim knew of defendant's prior convictions. Nevertheless, defendant argues that, even if he told her about the other crimes, he did not know whether she recalled them or whether she knew that the information would be useful in a custody dispute. Admissibility of defendant's testimony required only a showing that defendant personally knew the victim was aware of his prior convictions. Her appreciation or understanding of the significance of that evidence goes only to the weight of the evidence, not to its admissibility.

■      Defendant argues that the state's cross-examination regarding his other crimes, wrongs or acts was not a proper form of impeachment, because it did not meet the requirements of OEC 608 and OEC 609. OEC 608(2) provides:

> "Specific instances of the conduct of a witness, *for the purpose of attacking or supporting the credibility of the witness,* other than conviction of crime as provided in ORS 40.355, may not be proved by extrinsic evidence. Further, such specific instances of conduct may not, even if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness." (Emphasis supplied.)

OEC 609(1) provides:

> "*For the purpose of attacking the credibility of a witness,* evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (b) involved false statement or dishonesty." (Emphasis supplied.)

The emphasized portions of OEC 608 and OEC 609 demonstrate that, although these statutes provide limitations on the admissibility of evidence of other crimes, wrongs or acts for the purpose of attacking the credibility of a witness, they

provide no limitation on the admissibility of that type of evidence for other purposes.

As we have noted, defendant's testimony regarding his prior misdeeds tended to rebut his argument that the victim fabricated the charges to gain an advantage in a possible custody dispute. Although the testimony does reflect on defendant's credibility, it was not admitted for that purpose, but only to undermine or rebut defendant's theory of defense. Admitting the testimony for this purpose did not violate the limitations expressed in OEC 608 and OEC 609.

■ Defendant also contends that the prejudicial impact of the testimony regarding his other crimes, wrongs or acts, outweighed its probative value. The trial court balanced the prejudicial impact of defendant's testimony regarding his outstanding arrest warrants for indecent exposure against the probative value of the testimony when it admitted that testimony. The court said:

> "It's not irrelevant. It's a balancing question, I suppose. I think it goes right to the heart of the issue of motive on her part, and I think it's been well articulated.

> "I suppose * * * you always run the risk you'll run into somebody reviewing this case that's going to say that on balance its prejudicial effect outweighs its relevance. I don't think it does. Indecent exposure isn't rape.

> "I think that is the heart of the defendant's case, is that this whole thing was trumped up because she's afraid he was going to take the child away because she uses drugs, and he'd be a better parent. And her argument is if I was concerned about his taking the child away, I would have sicced [sic] the police on him a long time ago to advance the prosecution of indecent exposure, with the thought in mind that that might weigh against him in a custody fight. That sounds persuasive to me. Okay."

The trial court's balancing under OEC 403 is reviewed for abuse of discretion. *State v. Johns, supra,* 301 Or at 557. As to the testimony regarding defendant's outstanding arrest warrants, the trial court followed the steps outlined by the Supreme Court in *State v. Johns, supra,* 301 Or at 557-58, and *State v. Mayfield, supra,* 302 Or at 645-47. It determined that defendant's testimony regarding the victim's knowledge of the outstanding warrants was important

to the state's argument that the victim did not need to fabricate these charges. The testimony was especially persuasive coming from defendant. The trial court determined that the indecent exposure charges were not so similar to the charges at issue that the jury was likely to be improperly misled. Additionally, the warrants were issued during a period that the victim could have known about them through her relationship with defendant, and would have been fresh in her mind. The state elicited testimony only that the victim knew that defendant had two outstanding arrest warrants for indecent exposure. The details of those offenses were not explored. The trial court correctly balanced the numerous factors and did not abuse its discretion in admitting the testimony. *See State v. Bovee, supra,* 75 Or App at 548-49.

The trial court did not balance under OEC 403 defendant's remaining testimony regarding his various other misdeeds. Therefore, assuming, without deciding, that objections were properly raised to the remainder of that testimony, the trial court abused its discretion in admitting it. *See State v. Mayfield, supra,* 302 Or at 645. On retrial, the court must balance as required by OEC 403 and *State v. Johns, supra,* 301 Or at 557-59.

■ Finally, defendant also argues that the state improperly used the testimony in its closing argument to attack his credibility. The prosecutor pointed out that defendant had prior convictions, that he drank heavily, that he had been convicted of driving while revoked, and that there was an outstanding arrest warrant for defendant on charges of indecent exposure and that he did not support his children. He then asked whether that was "the background of a truth teller * * *." It was improper for the prosecutor to mention defendant's other crimes, wrongs or acts for purposes of attacking his credibility, because the testimony was not admitted for that purpose. However, except for one instance involving the prosecutor's mention of defendant's driving while revoked violation, the court sustained defendant's objections. On retrial, it would likely be improper for the prosecutor to attempt to attack defendant's credibility with this evidence, if it is not properly introduced for that purpose.

Reversed and remanded for a new trial.